BENAVIDES, Circuit Judge:
Treasure Chest Casino, LLC (“Treasure Chest”) appeals from an interlocutory order of the district court certifying under Federal Rule of Civil Procedure 23(b)(3) a plaintiff class consisting of injured Treasure Chest employees. We affirm the district court’s class certification.
*623 I. BACKGROUND
The appellees, Dennis Mullen, Sheila Bachemin, and Margaret Phipps (collectively, the “Named Plaintiffs”), are former employees of the M/V Treasure Chest Casino (the “Casino”), a floating casino owned and operated out of Kenner, Louisiana by appellant Treasure Chest. Mullen was an assistant pit boss, Bachemin was a dealer, and Phipps was employed as a slot-floor person and dealer.
Each Named Plaintiff has suffered respiratory illness allegedly caused by the Casino’s defective and/or improperly maintained air-conditioning and ventilating system. Each was diagnosed with asthma and bronchitis while employed aboard the Casino. Mullen and Bachemin, while aboard the Casino, suffered respiratory attacks requiring hospitalization. Kathleen McNamara, the Named Plaintiffs’ physician, testified in a deposition that as many as half of the 300 Casino employees that she had treated suffered from similar respiratory problems. She attributed the Named Plaintiffs’ and other crew members’ maladies to extremely smoky conditions in the Casino.
In January 1996, the Named Plaintiffs filed suit against Treasure Chest, making Jones Act, unseaworthiness, and maintenance and cure claims. They sought Rule 23 certification of a class consisting of
all members of the crew of the M/V Treasure Chest Casino who have been stricken with occupational respiratory illness caused by or exacerbated by the defective ventilation system in place aboard the vessel.
The parties conducted pre-certification discovery that included deposing the Named Plaintiffs, Dr. McNamara, and two other physicians. The parties then briefed the district court, which heard arguments in July 1997.
On August 29, 1997, ’the district court certified the proposed class under Rule 23(b)(3). Under the court’s plan, the liability issues common to all class members will be tried together in an initial trial phase. Those common issues include whether the employees of the Casino are seamen within the meaning of the Jones Act, whether the Casino is a vessel within the meaning of the Jones Act, whether the Casino was rendered unseaworthy by the air quality aboard, and whether Treasure Chest was negligent in relation to the Casino’s ventilation system. If the class prevails on the common liability issues in phase one, the issues affecting only individual class members will be tried in a second phase in waves of approximately five class members at a time. These limited issues include causation, damages, and comparative negligence.
Treasure Chest sought to appeal the class certification order, and the district court certified the issue for interlocutory appeal under 28 U.S.C. § 1292(b). We granted Treasure Chest permission to appeal.
II. DISCUSSION
A class may be certified under Rule 23(b)(3) only if it meets the four prerequisites found in Rule 23(a) and the two additional requirements found in Rule 23(b)(3). The four 23(a) prerequisites include
(1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties’ claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).
Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). The two 23(b) requirements are “predominance” and “superiority”: “Common questions must ‘predominate over any questions affecting only individual members’; and class resolution must be ‘superior to other available methods for the fair and efficient adjudication of the *624 controversy.’ ” Id. 117 S.Ct. at 2246 (quoting Fed.R.Civ.P. 23(b)(3)).
Treasure Chest argues on appeal that the district court erred in finding any of the Rule 23 requirements satisfied.[1] Before evaluating the six requirements seriatim, we note that the district court maintains great discretion in certifying and managing a class action. See Montelongo v. Meese, 803 F.2d 1341, 1351 (5th Cir.1986). We will reverse a district court’s decision to certify a class only upon a showing that the court abused its discretion, see Jenkins v. Raymark Industries, 782 F.2d 468, 471-72 (5th Cir.1986), or that it applied incorrect legal standards in reaching its decision, see Forbush v. J.C. Penney Co., 994 F.2d 1101, 1104-05 (5th Cir.1993).
A. Numerosity
The court found that “the class is so numerous that joinder of all members is impracticable,” Fed.R.Civ.P. 23(a)(1), referring to three factors. First, the class would likely consist of between 100 and 150 members. Second, owing to the transient nature of employment in the gambling business, it was likely that some of the putative, class members were geographically dispersed and unavailable for joinder. Third, putative class members still employed by the Casino might be reluctant to file individually for fear of workplace retaliation. Treasure Chest challenges only the second of the district court’s three reasons. It asserts that the district court’s claim that class members would be geographically dispersed was unsupported by evidence. They reference the court’s own comment that the “plaintiff has not introduced any specific evidence that there are potential class members that have moved out of the area.”
We find no abuse of discretion in the district court’s finding of numerosity. Although the number of members in a proposed class is not determinative of whether joinder is impracticable, see Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1038 (5th Cir.1981), the size of the class in this case — 100 to 150 members — is within the range that generally satisfies the numerosity requirement. See 1 New-berg on Class Actions § 3.05, at 3-25 (3d ed.1992) (suggesting that any class consisting of more than forty members “should raise a presumption that joinder is impracticable”); cf. Boykin v. Georgia-Pacific Corp., 706 F.2d 1384, 1386 (5th Cir.1983) (finding that numerosity requirement would not be met by a class with 20 members but was met by a class with 317 members).
Furthermore, the additional factors mentioned by the district court support its finding of numerosity. See Zeidman, 651 F.2d at 1038 (discussing relevant factors including, for example, “the geographical dispersion of the class, the ease with which class members may be identified, the na *625 ture of the action, and the size of each plaintiffs claim”). Notwithstanding the lack of any direct evidence, the district court reasonably inferred from the nature of the putative class members’ employment that some of them would be geographically dispersed. It also reasonably presumed that those potential class members still employed by Treasure Chest might be unwilling to sue individually or join a suit for fear of retaliation at their jobs. Based upon those considerations, it was within the district court’s discretion to find that joinder of all 100 to 150 class members would be impracticable.
B.Commonality
The district court found that “there are questions of law or fact common to the class,” Fed.R.Civ.P. 23(a)(2), on the basis of the class members’ identical theories of liability, their common claims under the Jones Act, and their uniform allegations of suffering injury from second-hand smoke. Treasure Chest challenges the district court’s assertion that all plaintiffs’ claims relate to second-hand smoke.
The district court did not abuse its discretion in finding commonality. The test for commonality is not demanding and is met “where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.” Lightbourn v. County of El Paso, 118 F.3d 421, 426 (5th Cir.1997). In this case, the putative class members will assert claims for negligence under the Jones Act and for operating an unseaworthy vessel. The common issues pertaining to these theories of liability — i.e., the class members’ status as Jones Act seamen, the negligence of Treasure Chest, and the unseaworthiness of the Casino — -are independently sufficient to establish commonality. It is therefore irrelevant whether the class members uniformly allege damages from second-hand smoke.
C. Typicality
The district found the “the claims or defenses of the parties are typical of the claims or defenses of the class,” Fed. R.Civ.P. 23(a)(3), because the Named Plaintiffs and the class members, by definition, all allege to have suffered occupation-related respiratory illness. Treasure Chest contends that the Named Plaintiffs’ claims are not typical of the class because a wide array of claims could fall under the “respiratory illness” category.
We find no abuse in the district court’s finding of typicality. Like commonality, the test for typicality is not demanding. It “focuses on the similarity between the named plaintiffs’ legal and remedial theories and the theories of those whom they purport to represent.” Lightbourn, 118 F.3d at 426. In this case, the Named Plaintiffs’ and the proposed class members’ legal and remedial theories appear to be exactly the same. The class complaint indicates that they will all premise liability for the Casino’s defective air ventilation system under the Jones Act and the doctrine of seaworthiness. Any variety in the illnesses the Named Plaintiffs and the class members suffered will not affect their legal or remedial theories, and thus does not defeat typicality.
D. Adequacy of Representation
The district court stated that “the representative parties will fairly and adequately protect the interests of the class,” Fed.R.Civ.P. 23(a)(4), because the Named Plaintiffs’ interests are identical to the interests of the proposed class and their attorneys have extensive experience litigating class actions and Jones Act cases. Treasure Chest argues on the appeal that the district court’s finding was erroneous because the Named Plaintiffs and the class members have suffered from varied illnesses and have varying susceptibilities to respiratory ailments.
We find no abuse of discretion in the district court’s finding. Differences *626 between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs’ interests and the class members’ interests. See Jenkins v. Raymark Industries, Inc., 782 F.2d 468, 472 (5th Cir.1986) (considering whether named plaintiffs have “an insufficient stake in the outcome or interests antagonistic to the unnamed members” in evaluating adequate representation requirement). The differences described by Treasure Chest may create variances in the ways that the Named Plaintiffs and class members will prove causation and damages. A class member who has never smoked, for example, may have less difficulty in proving that the conditions inside the Casino caused her asthma than will Bachemin, who has a history of smoking and whose claim may be subject to a defense of contributory negligence. Such a difference, however, does not affect the alignment of their interests. Nothing indicates that the class members will be inadequately represented by the Named Plaintiffs and their counsel.
E. Predominance
We see no abuse in the district court’s finding that “the questions of. law or fact common to the members of the class predominate over any questions affecting only individual members.” Fed. R.Civ.P. 23(b)(3). “In order to ‘predominate,’ common issues must constitute a significant part of the individual cases.” Jenkins, 782 F.2d at 472. The district court held that the issues to be tried commonly — seamen status, vessel status, negligence, and seaworthiness — were significant in relation to the individual issues of causation, damages, and contributory negligence. Treasure Chest argues on appeal that the district court abused its discretion by failing to weigh the common against the individual issues and by improperly finding causation to be a common issue.
Treasure Chest’s arguments are without merit. First, although the court’s predominance inquiry was not lengthy, there is no indication that the court limited its inquiry to counting issues instead of weighing them. Second, explicit in the district court’s decision is a finding that causation is a unique issue that will be resolved in the trial plan’s second-phase individual trials.
Even examining the district court’s predominance analysis more closely, we find no abuse. The common issues in this case, especially negligence and seaworthiness, are not only significant but also pivotal. They will undoubtedly require the parties to produce extensive evidence regarding the Casino’s air ventilation system, as well as testimony concerning Treasure Chest’s knowledge of, and response to, the Casino employees’ respiratory problems and complaints. The phase-one jury will have the difficult task of determining whether the air quality aboard the Casino resulted from a negligent breach of Treasure Chest’s duty to its employees or rendered the Casino unseaworthy. If Treasure Chest prevails on those two issues alone, they will prevail in the case.
Moreover, this case does not involve the type of individuated issues that have in the past led courts to find predominance lacking. For example, in Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Supreme Court found that common issues did not predominate where the members of the plaintiff class were exposed to asbestos-containing products from different sources over different time periods, some of the class members were asymptomatic while others had developed illnesses, and the class members were from a variety of states requiring the application of a multitude of different legal standards. See id. 117 S.Ct. at 2250 (citing Georgine v. Amchem Products, Inc., 83 F.3d 610, 626 (3d Cir.1996)). Similarly, in Castano v. American Tobacco Co., 84 F.3d 734 (5th Cir.1996), this Court found that a putative class of addicted smokers did not meet the predominance requirement because there *627 were complex choice-of-law issues and the case involved novel addiction-as-injury claims with no track record from which a court could determine which issues were “significant.” See id. at 741-45. Here, by contrast, the putative class members are all symptomatic by definition and claim injury from the same defective ventilation system over the same general period of time. Because all of the claims are under federal law, there are no individual choice-of-law issues. And, because negligence and doctrine-of-seaworthiness claims are time-tested bases for liability, the district court could reasonably evaluate the significance of the common issues without first establishing a track record.
F. Superiority
We also find no abuse of discretion in the district court’s finding that “a class action is superior to other available methods for the fair and efficient adjudication of the controversy.” Fed.R.Civ.P. 23(b)(3). The district court based its superiority finding on the fact that the class litigation in this case would not present the degree of managerial complexities that prompted this Court to decertify the putative class in Castaño. Specifically, the district court mentioned the lack of any complex choice-of-law or Erie problems, and that the class would consist of only hundreds, instead of millions, of members. The bifurcated-trial plan, the court found, would “promote judicial economy and avoid the wasteful, duplicative litigation which would inevitably result if these cases were tried individually.” Treasure Chest argues that the district court abused its discretion by failing adequately to consider how a trial on the merits would be conducted. It contends that because the Named Plaintiffs describe somewhat different causes for their ailments, a phase-one judgment of negligence or unseaworthiness related solely to tobacco smoke would be inadequate insofar as it would preclude plaintiffs from recovering for ailments that were caused by sources other than tobacco smoke in the phase-two trials.
We find no merit in Treasure Chest’s argument. First, Treasure Chest overstates the importance of the Named Plaintiffs’ conjecture regarding their own illnesses. It is true that, in addition to making second-hand smoke complaints, Dennis Mullen has complained about the temperature aboard the Casino, Sheila Bachemin has described one incident where paint fumes on the Casino “kicked in” her asthma, and Margaret Phipps has stated that her asthma might have been caused by dust on the air vents or germs on the radios used by multiple casino employees. As lay witnesses, however, the Named Plaintiffs’ opinions about the possible causes of their own respiratory conditions are of negligible evidentiary weight and probably would not be admissible at trial. See Fed.R.Evid. 701 (limiting admissibility of nonexpert opinion testimony); Doddy v. Oxy USA, Inc., 101 F.3d 448, 460 (5th Cir.1996) (“[A] person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person.”); Henry v. A/S Ocean, 512 F.2d 401, 408 (2d Cir.1975) (finding that the plaintiff in a Jones Act suit was properly prevented from testifying to his opinion that his persistent colds and skin rash had been caused by an accident in which he was knocked overboard). The medical experts already deposed in this case have unwaveringly cited excessive second-hand smoke as the most likely Casino-related factor to have exacerbated or caused the putative class members’ respiratory problems. It is thus likely that the trial will focus on excessive second-hand smoke as both the effect of the defective ventilation system and the cause of the putative class members’ respiratory problems.
Furthermore, even if the class does claim at trial that the Casino’s ventilation system was defective in relation to more than tobacco smoke, we are confident that the district court can ably manage *628 this case as a class action. Our precedent limits a negligent party’s liability to injuries that are caused by the same condition that rendered the party negligent. See Gavagan v. United States, 955 F.2d 1016, 1020-21 (5th Cir.1992). The court can easily abide by this precedent by instructing the jury to answer special verdicts finding whether the Treasure Chest was negligent, or the Casino was unseaworthy, as to each alleged causal agent, i.e., tobacco smoke, dust mites, fungi, paint fumes, et cetera. The court can then properly limit the injuries for which the phase-two juries could find Treasure Chest liable. Thus, if the phase-one jury were to find that Treasure Chest was negligent as to tobacco smoke but not as to paint fumes, any class member whose injuries were found by a phase-two jury to be caused by paint fumes would be unable to recover. Even though rendering multiple special verdicts would complicate the task for the phase-one jury and the court, we would see no abuse in the district court’s finding such a process superior to conducting duplicative individual trials.
We also agree with the district court that none of the superiority concerns raised by our decision in Castano requires a different result. There, many of the manageability problems stemmed from the million-person class membership, the complex choice-of-law issues, the novel addiction-as-injury cause of action, and the extensive subclassing requirements. As already discussed, none of those problems exist in this case. In fact, unlike the “Frankenstein’s monster” feared in Castano, 84 F.3d at 745 n. 19, this class is akin to other bifurcated class actions this Court has approved. See Watson v. Shell Oil Co., 979 F.2d 1014 (5th Cir.1992) (finding no abuse in the district court’s certification of a bifurcated class action arising from an oil refinery explosion where liability and punitive damages would be resolved commonly and injury, causation, and actual damages would be resolved individually); Jenkins, 782 F.2d 468 (finding no abuse of discretion in district court’s certification of a bifurcated class action where asbestos producers’ “state of the art defense” as well as product identification, product defectiveness, negligence, and punitive damages would be resolved commonly and causation, actual damages, and comparative fault would tried individually); Hernandez v. Motor Vessel Skyward, 61 F.R.D. 558 (S.D.Fla.1973), aff'd, 507 F.2d 1278-79 (5th Cir.1975) (unpublished) (certifying bifurcated class action on behalf of 350 passengers who were fed contaminated food aboard cruise ship where negligence would be tried commonly and causation and damages would be tried individually).
In Castano, this Court expressed a concern that having one jury consider the defendant’s conduct and another consider the plaintiffs’ comparative negligence could create Seventh Amendment problems. See Castano, 84 F.3d at 750-51 (citing In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1303 (7th Cir.1995)). This does not change our view of the district court’s superiority finding. Treasure Chest did not raise this issue to the district court nor has it been argued on appeal. We are reluctant to find that the district abused its discretion by failing to consider an issue that was not raised by the parties.
In any ease, we would not find the risk of infringing upon the parties’ Seventh Amendment rights significant in this case. The Seventh Amendment does not prohibit bifurcation of trials as long as the “ ‘the judge [does] not divide issues between separate trials in such a way that the same issue is reexamined by different juries.’ ” Cimino v. Raymark Industries, Inc., 151 F.3d 297, 320 n. 50 (5th Cir.1998) (quoting Rhone-Poulenc, 51 F.3d at 1303); see Alabama v. Blue Bird Body Co., Inc., 573 F.2d 309, 318 (5th Cir.1978). In Castano, we were concerned that allowing a second jury to consider the plaintiffs’ comparative negligence would invite that jury to reconsider the first jury’s findings concerning the defendants’ conduct. We believe that *629 such a risk has been avoided here by leaving all issues of causation for the phase-two jury. When a jury considers the comparative negligence of a plaintiff, “the focus is upon causation. It is inevitable that a comparison of the conduct of plaintiffs and defendants ultimately be in terms of causation.” Lewis v. Timco, Inc., 716 F.2d 1425, 1431 (5th Cir.1983) (en banc); see id. (permitting the use of comparative negligence in strict liability claims). Thus, in considering comparative negligence, the phase-two jury would not be reconsidering the first jury’s findings of whether Treasure Chest’s conduct was negligent or the Casino unseaworthy, but only the degree to which those conditions were the sole or contributing cause of the class member’s injury. Because the first jury will not be considering any issues of causation, no Seventh Amendment implications affect our review of the district court’s superiority finding.
III. CONCLUSION
For the foregoing reasons, we find that the district court did not abuse its discretion in certifying under Rule 23(b)(3) a class of all Casino employees stricken with occupation-related respiratory illnesses. AFFIRMED.

. Treasure Chest also argues on appeal that implicit in Rule 23 is an additional requirement that any class must be capable of objective identification before it can be certified. It contends that because being a member of the class in this case is contingent upon ultimate issues of causation, i.e., whether the class member’s illness was "caused or exacerbated by the defective ventilation system," Treasure Chest is prejudiced by being forced to defend against claimants who may not end up being members of the class. This same argument was already rejected by this Court in Forbush v. J.C. Penney Co., 994 F.2d 1101 (5th Cir.1993). There, we considered a defendant's contention that a class of pension beneficiaries was "hopelessly 'circular' ” because membership in the class was defined by the improper reduction of the class members’ benefits, which was also the ultimate issue in the case. Id. at 1105. We found that the defendant's argument was "meritless and, if accepted, would preclude certification of just about any class of persons alleging injury from a particular action. These persons are linked by this common complaint, and the possibility that some may fail to prevail on their individual claims will not defeat class membership.” Id. Here, because the class is similarly linked by a common complaint, the fact that the class is defined with reference to an ultimate issue of causation does not prevent certification.