Ashburn BYWATERS, Carl Lancaster, Betty Lancaster Hohenberger, Orman Roderick, June Roderick, and Nan Olson Beeler, for themselves and all others similarly situated, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. Civ.A. 6:99CV451.

United States District Court, E.D. Texas, Tyler Division.

Aug. 25, 2000.

Brad Eugene Brewer, Zelle Hofmann Voelbel & Gette, Dallas, TX, Nels J. Ackerson, James R. Baarda, Cecilia Fex, The Ackerson Group, Washington, DC, for Ashburn Bywaters, plaintiffs.

David W. Spohr, U.S. Dept. of Justice, Environment & Natural Resources General Litigation Section, Washington, DC, for U.S. defendant.

Edward Robert Human, Flowers, Davis, Fraser, Derryberry & Van Cleef, Tyler, TX, for Rails–to–Trails Conservancy, amicus.

Andy McSwain, Kara Pratt, Fulbright, Winniford & Marable, Waco, TX, for Texas Farm Bureau Mutual Insurance Company, movant.

### ORDER GRANTING CLASS CERTIFICATION

HANNAH, District Judge.

Came on for consideration Plaintiffs' Motion for Class Certification [Doc. # 11]. On

August 24, 2000, the Court held a hearing on the motion. The Court also reviewed briefs from *amicus curiae* Texas Farm Bureau and Rails–to–Trails Conservancy. In light of the pleadings, arguments presented at the hearing, and the applicable law, the Court rules on Plaintiffs' motion as follows.

## I. BACKGROUND

Plaintiffs seek certification of a class that would include all owners of land constituting the railroad corridor formerly operated by Gulf, Colorado and Santa Fe Railway Company, and subsequently by the Chaparral Railroad Company, Inc., running through Lamar, Hunt, Delta, Fannin and Collin Counties, Texas (hereafter "Chaparral Corridor"). Plaintiffs assert that they, together with approximately 1000 other land owners, are entitled to just compensation under the Fifth Amendment for property taken by the United States pursuant to the National Trails System Act Amendments of 1983 ("Amendments") to the National Trails System Act, 16 U.S.C. § 1241, *et seq.*, ("Rails–to–Trails Act").

The Amendments represent the culmination of congressional efforts to preserve shrinking rail trackage by converting unused rights-of-way to recreational trails. *Preseault v. Interstate Commerce Comm.*, 494 U.S. 1, 5, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990). Rail use has decreased from 272,000 miles in 1920 to about 141,000 miles in 1990, with experts estimating that approximately 3,000 additional track miles would be abandoned every year after 1990. *Id.* The Amendments authorize the Interstate Commerce Commission ("ICC")[1] to allow interim use of rail rights-of-way not in service as recreational trails to preserve the rights-of-way for possible future railroad use. *Id.* at 6, 110 S.Ct. 914. This practice is commonly referred to as railbanking.

Section 8(d) of the Amendments provides that such interim trail use shall not be treated as an abandonment of the use of such rights-of-way for railroad purposes. 16 U.S.C. § 1247(d). This provision "gives rise

to a takings question in the typical rails-to-trails case because many railroads do not own their rights-of-way outright but rather hold them under easements or similar property interests." *Preseault*, 494 U.S. at 8, 110 S.Ct. 914. In stating that interim trail use was not to be considered abandonment, Congress prevented property interests in the rights-of-way from reverting under state law back to the adjacent land owners. *Id.* The Amendments thus created the potential that private property would be taken for public use. *Moore v. United States*, 41 Fed.Cl. 394, 397 (1998).

The Supreme Court noted in *Preseault* that the Fifth Amendment does not prohibit the taking of private property for public use, but places a condition on the exercise of that power by requiring the government to provide just compensation. *Id.* at 11, 110 S.Ct. 914. The Court held that property owners who want to bring a takings claim against the government for converting rail rights-of-way for interim trail use were able to bring such claims under the Tucker Act. *Id.* The Tucker Act provides jurisdiction in the United States Court of Federal Claims for any claim against the Federal Government to recover damages founded on the Constitution, a statute, a regulation, or an express or implied-in-fact contract. *Id.* at 11–12, 110 S.Ct. 914 (citing the Tucker Act, 28 U.S.C. § 1491(a)(1)). In addition, the Little Tucker Act, 28 U.S.C. § 1346(a)(2), creates concurrent jurisdiction in the district courts where plaintiffs reside for such claims not exceeding $10,000 in amount. *Id.* at 12, 110 S.Ct. 914. Plaintiffs bring their claims in this district under the Little Tucker Act.

## II. LEGAL STANDARD FOR CLASS CERTIFICATION

■ Plaintiffs seek class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Certification of a class is appropriate where the party seeking certification demonstrates that the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are satisfied. *Amchem*

1. The ICC has since been abolished and many of its responsibilities, including those under 16 U.S.C. § 1274(d), have been delegated to the

Surface Transportation Board ("STB"). See Defendant's Opposition to Plaintiffs' Motion, p. 1, n. 1.

*Products, Inc. v. Windsor,* 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Specifically, Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Before certifying a class action, the trial court must perform a rigorous analysis and be satisfied that Rule 23(a)'s numerosity, commonality, typicality and adequacy of representation requirements are met. *General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

In addition to satisfying Rule 23(a) prerequisites, the party seeking class certification must establish that the action is maintainable under at least one provision of Rule 23(b). Plaintiffs assert that the requirements of Rule 23(b)(3) are met. That provision requires the court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

In determining whether certification is appropriate under Rule 23(b)(3), the court must remain mindful of the underlying policy that a 23(b)(3) action "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *State of Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309, 315–16 (5th Cir.1978) (citing Advisory Committee Note to Rule 23).

■ Class certification is a procedural determination only. *Smith v. Texaco, Inc.,* 88 F.Supp.2d 663, 674 (E.D.Tex.2000). Although the court must make a "rigorous analysis" of the Rule 23 prerequisites, it is not appropriate to examine the merits of the case at this point. *Id.* (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). However, the Supreme Court has recognized that it may "sometimes be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *General Telephone,* 457 U.S. at 160, 102 S.Ct. 2364.

■ The district court maintains substantial discretion in determining whether to certify a class action. *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 408 (5th Cir.1998). In light of the fact that Rule 23 provides a district judge with great flexibility to adopt appropriate procedures, certify conditionally, or decertify a class in later stages of litigation, the Fifth Circuit has held that judges should err in favor of certification. *Horton v. Goose Creek Independent School Dist.,* 690 F.2d 470, 487 (5th Cir.1982); see also *Smith v. Texaco, Inc.,* 88 F.Supp.2d 663, 673 (E.D.Tex.2000) (holding that courts "should not err to the side of refusing certification at the early stages of litigation").

## III. DISCUSSION

### A. Venue

■ As a threshold matter, the Court addresses Defendant's contention that approximately one-third of Plaintiffs' proposed class is ineligible for inclusion due to improper venue. Defendant asserts that Hunt County represents at least a third of the Chaparral Corridor and is the location of each of the representative sample of deeds offered by Plaintiffs.[2] Defendant claims that venue is improper for potential class members whose property is in Hunt county, pursuant to the Little Tucker Act venue provision, 28 U.S.C. § 1402(a)(1).

The Act provides that claims brought under § 1346(a) of the Act be prosecuted "only ... in the judicial district where the plaintiff resides." 28 U.S.C. § 1402(a)(1). Defendant notes that Hunt county lies in the Northern

---

**2.** Opposition to Plaintiff's Motion for Class Certi- fication, pp. 5–6.

District of Texas. Thus, Defendant concludes that the Eastern District of Texas is not the proper venue for potential class members whose property is located in Hunt county. In support, Defendant cites several cases where district courts held that venue must be proper under the Tucker Act for every plaintiff, even in the class action context. See *Favereau v. United States*, 44 F.Supp.2d 68, 69 (D.Maine 1999); *Saraco v. Hallett*, 831 F.Supp. 1154, 1162 (E.D.Pa. 1993); *Brooks v. Weinberger*, 637 F.Supp. 22 (D.D.C.1986); *Davila v. Weinberger*, 600 F.Supp. 599, 604 (D.D.C.1985); *National Treasury Employees Union v. Reagan*, 629 F.Supp. 762 (D.D.C.1985).

Plaintiffs argue that venue is proper under the Tucker Act because the representative Plaintiffs reside in the Eastern District of Texas. Plaintiffs note that the venue provision of the Tucker Act is silent on the key issues in this case: (1) whether parties from other districts may join in an action where proper venue exists for another plaintiff, and (2) whether a representative plaintiff's proper venue in a class action satisfies the venue requirement for the class.[3]

Plaintiffs note that Defendant does not cite any controlling precedent from this circuit or the Federal Circuit supporting Defendant's position. Plaintiffs argue that the cases cited by Defendant are distinguishable because they all dealt with nationwide class actions involving numerous states, whereas here all potential class members reside in two contiguous districts in the state of Texas. Thus, Plaintiffs assert that the concerns raised by the other courts, regarding forum shopping and the difficulty of applying various states' property laws, do not exist here. Rather, Plaintiffs argue, allowing Hunt county to remain included in this action would advance the purposes of the Little Tucker Act by allowing the plaintiffs to bring an action closer to home than the Court of Federal Claims in Washington, D.C.

The Court notes that this action involves the owners of property constituting a single rail line that travels through five connecting counties in the state of Texas. Unlike the cases cited by Defendant, this action does not involve numerous rail lines and nation-wide classes from a multitude of states. This pivotal fact is sufficient to distinguish those non-binding cases cited by Defendant. Plaintiffs are clearly not forum shopping here.

■ Venue does not relate to the power to adjudicate, but to the place where that power is to be exercised and "is a concept oriented around the convenience of the litigants and the court system." *Jones v. United States*, 407 F.Supp. 873, 876 (N.D.Tex. 1976). For this reason, federal courts are generally given great discretion in determining venue. *Id.* The Court is persuaded by the reasoning found in *United States v. Trucking Employers, Inc.*, 72 F.R.D. 98, 100 (D.D.C.1976), that venue is

> intimately connected to and predicated upon the personal appearance of the party. Because class actions do not necessarily require the presence of a class member before the court for an adjudication of his/her rights and liabilities, venue restrictions are not determinative of the ability of the court to hear the action with respect to all members of the class.

Rather, the relevant venue question in a class action is whether venue is proper as to the parties representing, and "in effect standing in for the absent class members." *Id.*

The Court finds no justification for excluding a portion of a class consisting of property owners along a single railroad corridor through five contiguous Texas counties solely on the ground that one of the counties happens to fall just inside the boundary of the Northern District of Texas. Excluding plaintiff class members on venue grounds when those plaintiffs may not even be required to appear would defeat rather than advance the convenience and appearance-oriented purposes of venue. The Court is satisfied that all named Plaintiffs, who will appear and stand in for absent class members, reside in the Eastern District of Texas. Accordingly, the Court rejects Defendant's argument that all Hunt County residents must be excluded from the proposed class of property owners

---

**3.** Reply Memorandum in Support of Plaintiffs' Motion for Class Certification, p. 5.

for purposes of determining class certification.

## B. Rule 23(a) Requirements

### 1. Rule 23(a)(1): Numerosity

■ The numerosity prerequisite is met when joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). Plaintiffs may not merely make an allegation that the class is too numerous to make joinder impracticable without some evidence or reasonable estimate of the number of purported class members. *Pederson v. Louisiana State University,* 213 F.3d 858, 868 (5th Cir.2000). However, Plaintiff need not establish the exact number of potential class members to meet the numerosity requirement. *Smith v. Texaco, Inc.,* 88 F.Supp.2d 663, 674 (E.D.Tex.2000).

■ This Court "must not focus on sheer numbers alone but must instead focus on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Pederson,* 213 F.3d at 868 (internal citations omitted). Other relevant factors the Court must consider include the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir.1981); *Smith,* 88 F.Supp.2d at 674. The Fifth Circuit has held that though the number of class members alone is not determinative of whether joinder is impracticable, a class consisting of 100 to 150 members is within the "range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir.1999). In support of this conclusion, the Court cited a treatise on class actions suggesting that any class consisting of more than forty members should raise a presumption that joinder is impracticable. *Id.* (citing 1 Newberg on Class Actions § 3.05, at 3–25 (3d ed.1992)). In the absence of any definitive pattern for numerosity in terms of the number of purported class members, the Fifth Circuit has left the numerosity determination to the sound discretion of the district court in controlling its litigation. *Zeidman,* 651 F.2d at 1038–39.

Plaintiffs assert that the numerosity requirement is met because the Chaparral Corridor includes approximately 500 parcels of land. Plaintiffs assert that many of the parcels are owned jointly by spouses or siblings. Defendant asserts that some individuals own more than one parcel of land. Thus, the estimated class size is somewhere between 300 and 1,000 members. Defendant contends that Plaintiffs have offered no evidence to support their estimated number of members, and that the size of the class would be significantly smaller for a number of reasons. The Court addresses each argument in turn.

■ First, Defendant argues that the Court should determine numerosity based on the number of parcels rather than the number of land owners, because Plaintiffs' claim is for the taking of property. Defendant argues that determining numerosity on the basis of individual land owners would violate the purpose of the Little Tucker Act by allowing claims above $10,000 for a single parcel of property where there is more than one owner.

■ The Court is not persuaded by Defendant's argument. The Supreme Court made it clear in *United States v. Will,* 449 U.S. 200, 211, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980) that jurisdiction under the Little Tucker Act is based on a determination that the *individual* claims of *individual* class members do not exceed $10,000 in amount. So long as each separate claim of each class member does not exceed $10,000, it makes no difference that one land parcel may have more than one owner, or that one person may own more than one land parcel in issue. Further, discussions of the numerosity requirement in the rails-to-trails context focus on the number of members, not the number of land parcels. See *Moore,* 41 Fed.Cl. at 397–98; *Hash v. United States,* 99–324–S–MHW, at 9–12, 2000 WL 1460801 (D.Idaho July 7, 2000).

■ Defendant argues that even if numerosity is determined based on the number of individual property owners, Plaintiffs' estimation of 1000 class members is mere speculation. Plaintiffs must present some reason-

able estimate of class size, but they need not establish the exact number of potential class members to meet the numerosity requirement. *Smith*, 88 F.Supp.2d at 674. At the class certification hearing, counsel for Plaintiffs indicated that the estimated class size was between 300 and 500 members. Defendant concedes that at least 468 parcels of land are at issue. Thus, even if some class members own more than one parcel and some parcels are owned by more than one individual, class size will still likely fall somewhere in the 300 to 500 member range. The Court finds this range sufficient to satisfy the numerosity requirement. See *Mullen*, 186 F.3d at 624 (holding that a class consisting of 100 to 150 members is within the "range that generally satisfies the numerosity requirement"); *Hash*, 99–324–S–MHW at 9–11, 2000 WL 1460801 (holding that class "in excess of 200 individuals" met numerosity requirement).

The Court has already determined that class members residing in Hunt County should not be excluded on the basis of venue; thus, Defendant's argument that numerosity is not met because Hunt County class members cannot be counted is moot. However, the Court notes that even if the class size was reduced by one-third through the exclusion of Hunt County members, the class would still be large enough to meet the numerosity requirement.

 However, the Court should not rely solely on the sheer numbers, but should consider all relevant factors in making the numerosity determination. See *Pederson*, 213 F.3d at 868. Defendant argues that numerosity is not met because all purported class members are geographically discrete and should be easy to identify for joinder purposes from a search of local title records. It is correct that all land parcels at issue are in a discrete geographical location; however, Defendant incorrectly assumes that merely because it may be *possible* to identify all members of the proposed class that joinder is automatically *practicable*. To satisfy the numerosity requirement, joinder need not be impossible, merely impracticable. *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942, 954 (E.D.Tex.2000).

 ʹOther factors relevant to the numerosity determination include the nature of the action and the size of each Plaintiff's claim. These factors both work in favor of finding numerosity. Defendant argues that Plaintiffs should not be allowed to use the size of their claims in favor of certification because they have voluntarily capped their recovery at $10,000 instead of pursuing larger claims in the Court of Federal Claims. The Court disagrees for two reasons. First, Plaintiffs are permitted to waive recovery in excess of $10,000 for jurisdictional purposes, and this Court will not penalize Plaintiffs for exercising that right. Second, this action involves one stretch of rail corridor from Farmersville, Texas, to Paris, Texas, that is approximately 56 miles long. This 56–mile corridor is divided into at least 468 separate parcels. Though it is impossible at this early stage to determine the actual size of each member's claim, the Court may reasonably deduce a likelihood that individual claims are relatively small.

The Court of Federal Claims, which generally disfavors class certification, held in *Cooke v. United States*, 1 Cl.Ct. 695, 698 (1983), that "[c]ertification should be granted most liberally where the amount of the individual recovery is small in relation to the litigation costs.... It is sufficient that the probable cost of litigation would render individual actions unprofitable." This Court is persuaded that proposed class members would probably not pursue their claims individually due to disproportionate litigation expense in relation to the actual size and value of their takings claims. Weighing all the relevant factors, the Court finds that Plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

### 2. *Rule 23(a)(2): Commonality*

 Under Rule 23(a)(2), Plaintiff must establish that there are questions of law or fact common to the class. The test for commonality is not demanding. *Mullen*, 186 F.3d at 625; *Smith*, 88 F.Supp.2d at 675. Indeed, it is well established that the burden of demonstrating commonality under Rule 23(a) is far less stringent than the commonality requirement of Rule 23(b)(3). *Smith*, 88

F.Supp.2d at 675. Commonality is established where "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen,* 186 F.3d at 625 (quoting *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir.1997)).

Plaintiffs contend that the commonality requirement is met because all proposed class members are Texas land owners, affected in the same manner by the uniform application of a single federal statute to a single rail line in the state of Texas. Further, Defendant will likely raise common defenses to the claims of class members. See *Moore,* 41 Fed.Cl. at 398.

The Court finds that Plaintiffs have established more than one issue of law common to the entire class; thus, Plaintiffs have satisfied the commonality requirement of Rule 23(a)(2). The Court will address common issues further in its discussion of Rule 23(b)(3) below.

### 3. *Rule 23(a)(3): Typicality*

The named Plaintiffs must show that their claims are typical of claims of the class. The test for typicality, like that of commonality, is not demanding. *Mullen,* 186 F.3d at 625. The typicality inquiry focuses on the similarity between the named Plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. *Id.* Typicality exists when the same "legal and remedial theories" support the claims of named and unnamed plaintiffs. *Shaw,* 91 F.Supp.2d at 955. When the claims of both arise from the same event or course of conduct and are based on the same legal theory, the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. *Id.*

Plaintiffs assert that the typicality requirement is met because their claims, like the claims of all class members, arise from the common course of conduct by the government in applying the Rails–to–Trails Act to effect a taking of each class member's land. Plaintiffs assert that they share a common legal theory under the Tucker Act and Fifth Amendment with all class members, and that

all members seek damages constituting just compensation for the alleged takings.

Defendant argues that the typicality requirement is not met because the Court must first conduct fact-specific and individualized inquiries into each prospective class member's ownership interest before concluding whether a taking occurred as to each class member. In support, Defendant cites *Swisher v. United States,* 189 F.R.D. 638 (D.Kan. 1999), in which the court denied class certification for lack of typicality.

The Court finds that *Swisher* is entirely distinguishable. There, plaintiffs attempted to certify a nation-wide class consisting of over 50,000 members. *Id.* at 640. In finding a lack of typicality, the district court noted that a nation-wide class would involve the state law of numerous jurisdictions. *Id.* at 641. The court emphasized the plaintiff's lack of effort in attempting to establish typicality, concluding that "the Court questions whether plaintiff has any interest in prosecuting cases with different conveyance language, different governing state laws and different factual bases." *Id.* at 642.

The case at hand involves only the conveyance laws of Texas and involves only one rail corridor. The Court finds that this case is more similar to the situations in *Moore* and *Hash.* Like the plaintiff classes in those cases, the potential class members here are all owners of property along a single rail corridor claiming a taking by operation of the Rails–to–Trails Act and seeking just compensation under the Fifth Amendment through the Little Tucker Act. Thus, the Court is convinced that the interests of the representative Plaintiffs are coextensive with, and typical of, the claims of the proposed class members.

### 4. *Rule 23(a)(4): Adequacy of Representation*

The final criterion under Rule 23(a) requires that the named Plaintiffs and their counsel "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."

*Amchem,* 521 U.S. at 625, 117 S.Ct. 2231. Two elements must be satisfied: (1) concerns regarding the qualifications of counsel; and (2) concerns regarding the relationship between interests of the class representative and the interests of other class members. *Smith,* 88 F.Supp.2d at 677.

Defendant concedes that it has "no doubt as to the quality of plaintiffs' chosen counsel[.]" [4] The Court agrees. Plaintiffs' counsel have years of experience litigating class actions in general, and class actions specifically concerning railroad right-of-way ownership issues. Thus, the Court has no concerns regarding the qualifications of counsel that would defeat the adequacy of representation requirement.

■ Defendant contends, however, that antagonisms and divergence of interest between named Plaintiffs and putative class members defeat the adequacy of representation requirement. Defendant argues that the adjudication of a takings claim is so individualized and fact-specific that Plaintiffs are unable to establish the requisite sharing of interests and absence of antagonism.

■ The Fifth Circuit has held that differences between named Plaintiffs and class members render the named Plaintiffs inadequate representatives "only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen,* 186 F.3d at 625–26. The adequacy of representation element is satisfied if the named Plaintiffs' interests are "sufficiently aligned with those of other class members.... This element requires similarity, not identity of interests." *Smith,* 88 F.Supp.2d at 678. Further, the district court may re-evaluate class certification and adequacy of representation in light of evidence adduced at trial, and may take appropriate steps if inadequacy of representation is found. See *id.* at 678 n. 9 (citing to *Carpenter v. Stephen F. Austin State Univ.,* 706 F.2d 608, 617 (5th Cir.1983)).

The Court finds that the interests of the representative Plaintiffs are not in conflict with those of other purported class members. The Court further finds that the interests of the representative Plaintiffs are sufficiently aligned with those of other class members, and that the representative Plaintiffs will fairly and adequately protect the interests of the class. Any individual inquiries necessary to determine the takings issues need not be addressed until after all common issues are resolved. See *Hash,* slip op. at 18. Accordingly, the Court finds that Plaintiffs have established all four prerequisites of Rule 23(a).

**C. Rule 23(b) Requirements**

■ In addition to meeting the four prerequisites under Rule 23(a), Plaintiffs must also satisfy at least one of three parts of Fed.R.Civ.P. 23(b). Plaintiffs assert that this case satisfies the requirements of Rule 23(b)(3). Class certification under Rule 23(b)(3) is proper where the Court finds that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) includes a non-exhaustive list of factors pertinent to the Court's consideration of the predominance and superiority criteria: (1) the interest of members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Amchem,* 521 U.S. at 615–16, 117 S.Ct. 2231.

■ The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623, 117 S.Ct. 2231. The predominance criterion is far more demanding than the commonality requirement under Rule 23(a). *Id.* at 624, 117 S.Ct. 2231. "In order to predominate, common issues must constitute a significant part of the individual cases." *Mullen,* 186 F.3d at

---

4. Opposition to Plaintiffs' Motion for Class Certi- fication, p. 18.

626. The purpose of certifying a class action is "to limit and hopefully avoid repetitive individual determinations of the Defendant's common practices and courses of conduct." *Smith*, 88 F.Supp.2d at 681.

■ More specifically, Plaintiffs assert that the claims of all class members are common in that they arise from:

(1) a single federal statute, (2) applied by a single federal agency, (3) relying on a single federal regulation, (4) applied to a single railroad abandonment application (5) and a single trail use proposal, (6) resulting in a single federal agency order, (7) causing a single railroad line (8) to be subjected to the same trail use (9) by the same trail sponsor (10) under the same terms and conditions (11) in the same jurisdiction (12) subject to the same underlying state property laws (14)[sic] at the same time, for all affected parties. Further, the damage claims of all members of the class will be determined (15) under the same standards of real estate valuation, (16) applying the same standard for prejudgment interest, and (17) the same federal statutory standards for recoupment of surveyors, appraisers and attorneys fees.[5]

Defendant argues that the question whether a property interest has been taken as a result of railbanking and interim trail use is a "complex and individualized inquiry."[6] Defendant contends that the Court's inquiry must involve numerous individualized determinations on a parcel-by-parcel basis. See *Swisher*, 189 F.R.D. 638. Thus, Defendant concludes that the individual, fact-specific issues will predominate over any common issues.[7]

Defendant's arguments are almost identical to defense arguments made in *Hash*, slip op. 23–24. The *Hash* court rejected these arguments, holding that questions of law or fact common to class members predominated over any questions affecting only individual members. *Hash*, slip op. at 24. The court concluded that "this action was brought as the result of the uniform application of a single federal statute to a single rail line … each class member has virtually the same claims against the Defendant and must litigate and resolve similar issues." *Id.*

The court in *Moore* came to a similar conclusion, holding that common issues of liability for takings under the Rails–to–Trails Act predominated over individual inquiries, and that the court could explore the precise nature of individual property interests after common issues were determined. *Moore*, 41 Fed.Cl. at 399. Another district court recently certified a state-wide class in *Schneider v. United States*, 197 F.R.D. 397 (D.Neb. 2000). The *Schneider* court certified a state-wide class of owners of land constituting railroad corridors that were converted to interim trail use under the Rails–to–Trails Act. In analyzing the commonality requirement, the court held that "a determination of the conditions under which liability for a taking would attach is similar in every case … every case requires the Court to determine whether the Rails–to–Trails Act, which is an act of Congress, constitutes taking of private land for public use, which necessarily involves questions of abandonment and whether interim trail use is considered a railroad purpose and/or use." *Schneider*, 197 F.R.D. at 401. The court further concluded that "[a]lthough the United States … may be correct in their assertion that a takings inquiry is highly fact-specific … those individual issues need not be resolved prior to the common issues." *Id.*

■ This Court agrees with the *Hash*, *Moore*, and *Schneider* courts that the common issues of law or fact predominate over any individual issues. As in those three cases, the case at hand involves common liability issues under the Rails–to–Trails Act for the taking of private land. The Court maintains wide discretion under Rule 23 to alter or decertify the class at later stages of proceeding if the Court deems such decertifi-

---

5. Memorandum in Support of Plaintiffs' Motion, p. 18.

6. Opposition to Plaintiffs' Motion, p. 22.

7. *Id.* at 24.

cation or alternation appropriate to handle the individual inquiries.

■ Defendant asserts that a class action is not the superior method for handling Plaintiffs' takings claims. Defendant would have the Court require the owners of each of the 468 land parcels to bring individual actions before the Court, or require the named Plaintiffs to seek joinder of each individual owner. Defendant asserts that a major factor making class actions a superior method is to authorize an award of attorney's fees to prevailing plaintiffs, but that this factor is absent in this case because prevailing plaintiffs can recover costs and fees pursuant to 42 U.S.C. § 4654(c).

The Court finds that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Requiring all class members to bring separate actions could result in hundreds of separate lawsuits. It is far more efficient in the long run for the Court to decide all issues common to the class in one decision, rather than repeatedly addressing the same issues in separate actions. Further, requiring hundreds of potential class members to seek joinder would make the proceeding unnecessarily inefficient, costly and time consuming. The Court is not persuaded that a class action loses its superiority merely because prevailing plaintiffs in individual lawsuits could recover attorney's fees. This fact does not negate the significant burdens such separate lawsuits would place on this Court. Thus, the Court finds that Plaintiffs have satisfied the requirements of Rule 23(b)(3).

## IV. CONCLUSION

Based on the foregoing discussion, the Court finds that the representative Plaintiffs have satisfied the requirements for class certification pursuant to Rule 23(a) and (b)(3). The Court finds that the purported class is sufficiently numerous, there are common issues of law or fact that predominate over individual issues, the claims of the representative Plaintiffs are typical of the claims of other class members, the representative Plaintiffs' and their counsel will adequately represent and protect the interests of other class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Court finds that Plaintiffs' Motion for Class Certification should be **GRANTED.** Accordingly,

**IT IS HEREBY ORDERED** that the following class is certified:

All persons who own an interest in land constituting the Chaparral railroad corridor extending from Farmersville, Texas, to Paris, Texas, that is now occupied and controlled for trail use pursuant to the National Trails System Act, and who allege that they have been damaged in the amount of $10,000 or less by being deprived of their rights to possession, control, and enjoyment of their land as a result of a Trail Use Order, or who waive claims exceeding $10,000. This class excludes railroad companies and their successors in interest, and further excludes persons who have filed, intervened or choose to intervene or opt into separate lawsuits against the United States for compensation in the same interests in land.

**IT IS FURTHER ORDERED** that Plaintiffs shall submit to the Court and to Defendant within thirty (30) days from the date of this Order a proposed notice to class members and Plaintiffs' plan for providing notice to all potential class members for the Court's approval. Defendant and Rails–to–Trails Conservancy shall submit any objections to the form or content of the notice and plan within fourteen (14) days after Plaintiffs submit their proposed notice and plan.

**IT IS SO ORDERED.**