**Ralph E. HUGHES, et al., Plaintiffs,**

v.

**CARDINAL FEDERAL SAVINGS & LOAN ASSOCIATION, Defendant.**

No. C–1–82–201.

United States District Court,
S.D. Ohio, W.D.

Jan. 27, 1983.

---

James B. Helmer, Jr., Kohn & Helmer, Timothy L. Bouscaren, Cincinnati, Ohio, for Hughes, the Crain's and the Neidich's.

Lawrence R. Fisse, Batavia, Ohio, for the Burgess's and the Harvey's.

Harold G. Korbee, Cincinnati, Ohio, for defendants.

## OPINION AND ORDER CERTIFYING CLASS ACTION

SPIEGEL, District Judge:

This matter came before the Court on plaintiffs' motion for class certification (doc. 22), defendant's response (doc. 50), and plaintiffs' reply (doc. 54). A hearing was held on December 22, 1982 and argument presented by counsel for plaintiffs and defendant. After the hearing, the Court advised counsel that this case would be certified as a class action and requested counsel to submit an agreed upon definition of the class. By letter of January 17, 1983 the parties advised the Court of their agreed upon definition of the class. Defendant has reserved its objection to the class certification.

■ Rule 23(a), Fed.R.Civ.P. lists certain prerequisites that must initially be met before a class action can be maintained. In addition, the proposed class must fall into one of the alternative categories listed in Rule 23(b). Plaintiffs allege that the proposed class is properly maintainable under either Rule 23(b)(2) or 23(b)(3). After considering all of the memoranda submitted, as well as arguments presented by counsel at the hearing it is the conclusion of the Court that this case should be certified as a class action pursuant to Fed.R.Civ.P. 23(b)(3).

### A. Rule 23(a)

■ The first requirement of Rule 23(a) is that the class is so numerous that joinder of all members is impracticable. There is no specific number of parties necessary to constitute a legitimate class. *Senter v. General Motors Corp.,* 532 F.2d 511, 523 (6th Cir.1976). Plaintiffs have asserted it is not possible to determine the exact size of the class until further discovery takes place but that they believe the number exceeds nine hundred (900). The number of persons belonging to the proposed subclass is thought to be somewhere between seventy-three (73) and two hundred and thirty-seven (237). Joinder of all these persons clearly is impracticable and the first requirement of Rule 23(a) therefore is met.

Rule 23(a)(2) requires that class members have questions of fact or law in common. In this case the primary issue of law applicable to all members of the potential class is whether defendant violated their rights under the Truth-in-Lending Act. To this end, it is necessary to determine whether the increase in the interest rates on loans to members of the class constituted a refinancing and if so, whether proper disclosure of credit terms was made to class members when the interest rates on their loans were increased. It is alleged that defendant used standard forms when the interest rates were increased and, therefore, behaved in the same manner to all class members. These are questions of law similar to all members of the class and plaintiffs have, therefore, met the second requirement of Rule 23(a).

With regard to the subclass, all have mortgage loan modification agreements containing the same disputed language. The same factual and legal questions, therefore, arise in each instance and we find that the subclass also meets the second requirement of Rule 23(a).

■ The fact that some individual issues may coexist with common issues does not prevent the action from meeting the prerequisite that common questions be present under Rule 23(a). *Katz v. Carte Blanche,* 53 F.R.D. 539 (W.D.Pa.1971), *rev'd and rem. on other grounds,* 496 F.2d 747 (3d Cir. 1974), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). Individual questions may be addressed subsequent to our resolution of the issues common to all class members.

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Without ruling on the status of the plaintiff Ralph Hughes, we find that the claims of the nominal plaintiffs are representative of the claims of class members and sub-class members they purport to represent in that they have all suffered the same alleged injury as a result of the same conduct on the part of defendant. We find that this requirement of Rule 23(a) also has been met.

The fourth requirement of Rule 23(a) is that the representative parties will fairly and accurately protect the interests of the class. Defendant asserted that the interests of the larger class and those of the sub-class are in conflict but we find this is not supported by the record before the Court thus far. The interests of all the class members is to recover damages for alleged Truth-in-Lending violations and to prevent any violations in the future. Plaintiffs are well represented by counsel experienced in these type cases and we are confident that they will vigorously pursue this case to the benefit of all the class. The fourth requirement of Rule 23(a), therefore, is met; *Eisen v. Carlisle & Jacqueline,* 391 F.2d 555 (2d Cir.1968); *Joseph v. Norman's Health Club, Inc.,* 336 F.Supp. 307 (E.D.Mo. 1971).

We also conclude that the class should be certified under Rule 23(b)(3) rather than 23(b)(2). A class may be certified under Rule 23(b)(3) if

The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

We find that the common questions clearly predominate over the individual questions that might arise. Defendant suggested at the hearing that there will be a need to determine in each case whether the mortgagee is a commercial or consumer borrower and that these questions of fact should be litigated separately. We conclude, however, that these questions may be resolved prior to trial through discovery. As the class by definition only includes consumer borrowers, commercial borrowers would not be included at the time the case goes to trial.

Defendant also argues that it has individual counterclaims for reformation of the contract against all members of the sub-class and that these cases, therefore, should be litigated separately. Again we disagree. All of the loan modification agreements held by members of the sub-class contain the exact same language. The question whether defendant is entitled to have these contracts reformed is a question of law common to all members of the sub-class. We find, therefore, that the common questions regarding alleged truth-in-lending violations predominate over any individual questions.

Because of the predominance of common questions and the large number of persons involved, we also find that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

· We conclude initially that there is not much incentive in the Act for individuals to pursue alleged Truth-in-Lending violations.

The costs of litigation against a financial institution can be enormous, actual damages are difficult to prove and the statutory recovery is low. It is in most individuals' interests, however, and in the public interest that lending institutions comply with the Act and be found responsible to consumer borrowers if they do not comply. Were it not for the class action, many borrowers likely would not pursue their rights in court. If any potential class members prefer to litigate their claims individually, they are entitled to opt out of the class pursuant to Rule 23(c)(2). It is our belief, however, that class action treatment of this case will eliminate a potential of multiplicity lawsuits while at the same time providing a forum in which these persons may fairly litigate their claims.

Moreover, a class action of this type is easily manageable. The class is not too large and most are area residents. Defendant has easy access to all names and addresses and the sending of notices will not be a burdensome task.

We conclude further that the primary objective of this litigation appears to be recovery of monetary damages and that certification under Rule 23(b)(3), therefore, is superior to certification under Rule 23(b)(2). *See Graybeal v. American Savings & Loan Association,* 59 F.R.D. 7 (D.D.C.1973); *Goldman v. First National Bank of Chicago,* 56 F.R.D. 587 (N.D.Ill.1972), *class denial rev'd,* 532 F.2d 10 (7th Cir.1976). Moreover, under Rule 23(b)(3), each class member is entitled to receive notice and to opt out of the class if he or she does not want to participate in this litigation. This is a necessary protection in cases such as this where each class member has a relationship with the defendant institution that they may or may not want to alter.

For the foregoing reasons, therefore, we find that this action shall be certified as a class action pursuant to Rule 23(b)(3), Fed. R.Civ.P. For the purposes of sending notice, the tentative definition of the class is that it shall consist of all individuals who can be identified from defendant's records who individually meet or whose loans meet all of the following criteria:

1. natural person who is a sole debtor or a co-debtor with only another natural person;

2. on or before May 31, 1978 borrowed funds from Buckeye Savings Association and executed, *inter alia,* a note, real estate mortgage, and any one of several forms of a Buckeye "Variable Interest Rate Mortgage Loan Modification Agreement";

3. the real property described in the mortgage is located in Ohio;

4. has never been in other litigation with Cardinal Federal Savings and Loan Association, whether such litigation is pending or concluded;

5. the loan at the time of closing was a purported "consumer" transaction under the Truth-in-Lending Act and Regulation Z; and

6. was mailed by Cardinal Federal Savings and Loan Association a notice of interest rate increase in one of the forms attached to the Third Amended Complaint advising of an interest rate increase effective on or after February 26, 1981 and thereafter in fact had the interest rate increased in accordance with such notice.

CONTRACT SUB–CLASS

The sub-class on the contract claim shall consist of all persons who satisfy all of the elements of the definition of the Truth-in-Lending Class above and further who executed Loan Modification Agreements with Buckeye Savings Association in the form as attached hereto as exhibit A.

This class definition is tentative and the Court reserves the right to modify it in accordance with the law or with evidence presented. The ultimate class shall include only those persons who remained a "consumer" for purposes of the Truth-in-Lending Act and Regulation Z at the time that interest rate increases were made by Cardinal Federal Savings and Loan Association.

The parties are hereby Ordered to provide the Court with an agreed upon notice to the class by February 14, 1983 per our Order of December 29, 1982.

SO ORDERED.