# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-20211

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2014

Lyle W. Cayce
Clerk

LISA MABARY,

Plaintiff - Appellant

v.

HOME TOWN BANK, N.A.,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Lisa Mabary filed a class action claim alleging that Home Town Bank violated the Electronic Funds Transfer Act[1] ("EFTA") by failing to post an external notice of fees on its automatic teller machines ("ATMs"). While the suit was pending but before class certification, Congress amended the EFTA to eliminate the external notice requirement.[2] The district court dismissed Mabary's claim and denied class certification. We REVERSE the dismissal of Mabary's claim and VACATE and REMAND the denial of class certification.

---

[1] 15 U.S.C. § 1963 *et seq.*

[2] Public law No. 112–216.

No. 13-20211

I.

On October 19, 2010, Mabary sued Home Town Bank ("Home Town"), on behalf of herself and all others similarly situated, alleging that Home Town violated the EFTA and its implementing Regulation.[3] The EFTA requires any ATM operator who imposes a fee on users to provide notice that a fee will be charged and the amount.[4] At the time Mabary filed her suit, the statute required that the notice be posted in two places (the "two notice" provision): both externally at the ATM machine (the "posted notice"), and on the screen of the ATM or on a paper printout before the transaction is completed (the "screen notice").[5] If a transaction fee is charged without the required notice, the statute provides that consumers can recover actual damages, statutory damages, costs, and fees.[6]

In her complaint, Mabary alleged that in 2010 she was charged a $2.00 fee in connection with one or more electronic fund transfers she completed using Home Town's ATMs. She claimed the ATMs lacked the posted notice required by the statute. There is no dispute that Mabary received an actual screen notice of the fee and accepted an on-screen prompt to continue with the transaction after the notice. Mabary's suit thus did not seek actual damages for herself or for any putative class member. Rather, she sought "statutory damages for violations of a consumer protection law where Plaintiff and the putative class have not suffered any actual out-of-pocket economic injury." Mabary sought to represent a class of persons to be defined as follows: All persons who: (1) were charged a "terminal fee" at ATMs operated by Defendant when such persons made an electronic fund transfer and/or balance inquiry

---

[3] 12 C.F.R. § 205.1 *et seq.*
[4] 15 U.S.C. § 1693b(d)(3)(A).
[5] *Id.* § 1693b(d)(3)(B).
[6] *See id.* § 1693m(a).

No. 13-20211

where, (2) no notice indicating that such fee was to be charged was posted on or at the outside of the ATM machine.

On February 3, 2011, Home Town made a Fed. R. Civ. P. 68 Offer of Judgment to Mabary, which Home Town contends tendered the full amount of Mabary's individual claim. Mabary did not accept the offer, and filed a First Amended Complaint and Motion for Class Certification on February 7, 2011.

On February 21, Home Town filed a motion to dismiss the Amended Complaint under Fed. R. of Civ. P. 12(b)(1), contending that its Rule 68 offer divested the court of subject matter jurisdiction by mooting Mabary's individual claims. The district court denied the motion to dismiss on June 27.

On October 5, 2011, Home Town filed a Motion to Dismiss or Alternatively for Stay. Home Town argued that Mabary lacked standing because, having received actual notice of the fee, she suffered no injury-in-fact. On November 22, the district court certified the class. But it later determined it had improperly certified the class before resolving Home Town's Motion to Dismiss, and decertified the class on December 21. Home Town requested a stay pending Supreme Court review of a related case, *First American Financial Corporation v. Edwards*.[7] The district court granted the stay. The Supreme Court later dismissed *First American* as improvidently granted.[8] The district court then unstayed Mabary's case on August 10, 2012, and considered the Motion to Dismiss. It found that Mabary did have standing to proceed because the injury required by Article III may exist solely by virtue of the invasion of legal rights, and it denied the motion on August 30.[9] On November 19, the district court stated it was ready to reinstate certification but requested updated briefs.

---

[7] 132 S. Ct. 2536 (2012).

[8] *Id.*

[9] *Mabary v. Hometown Bank, N.A.*, 888 F. Supp. 2d 857 (S.D. Tex. 2012).

No. 13-20211

During that process, Congress unanimously enacted H.R. 4367 (the "EFTA amendment")[10] on December 20, 2012, which amended the EFTA by repealing the posted notice requirement, leaving only the screen notice requirement that Mabary indisputably received.

On July 15, 2013, the district court denied Mabary's motion for class certification and dismissed her suit with prejudice. Having determined that Mabary's claim did not survive the passage of H.R. 4367, the district court also concluded that unnamed class members could not become parties to the litigation on the basis of a class claim that no longer existed.

Mabary timely appealed.

## II.

Home Town first contends that Mabary lacks standing to bring her claim because she indisputably received actual notice of the ATM fee and thus suffered no injury-in-fact. Home Town characterizes the form of the notice required by the statute as nothing more than a procedural mechanism whose absence creates no concrete injury. "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."[11] But we must disagree that Mabary suffered no concrete injury-in-fact as required by Article III. "Many statutes, notably consumer-protection statutes, authorize the award of damages (called 'statutory damages') for violations that cause so little measurable injury that the cost of proving up damages would exceed the damages themselves, making the right to sue nugatory."[12] The EFTA's damages provisions is a valid enforcement mechanism for such an injury here. A user of an ATM is not in the same position to decline an ATM

---

[10] Public law No. 112–216.

[11] *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009).

[12] *Crabill v. Trans Union, LLC*, 259 F.3d 662, 665 (7th Cir. 2001).

No. 13-20211

transaction at the initial point, where she walks by the ATM and sees the posted notice that Congress required, as she is at a later point, when she receives on-screen notice only after having retrieved her ATM card, entered personal information such as a Personal Identification Number, and initiated a transaction. Congress's determination that consumers were entitled to the fee information they need to decline a transaction before investing the time needed to initiate it protects a substantive, if small, right, and its deprivation is an injury-in-fact that allows Mabary to pursue her claim here.[13]

### III.

Home Town also argues that its February 3, 2011, Rule 68 Offer of Judgment to Mabary in the amount of $1,000—an offer Mabary did not accept—moots her claim by offering her all relief possible under the EFTA. Because no class had been certified when Mabary's claims were mooted, Home Town alleges, the entire case is moot and must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

The district court below rejected Home Town's claim,[14] as do we. Although an offer of complete relief (even an unaccepted one) will generally moot a plaintiff's claim,[15] we agree with the district court that these

---

[13] The Eighth Circuit has also concluded that a plaintiff in Mabary's position satisfies the standing requirement of Article III. *See Charvat v. Mutual First Federal Credit Union*, 725 F.3d 819, 825 (8th Cir. August 2, 2013) (holding that plaintiff suffered an "informational injury" in not receiving posted notice because plaintiff's right to a particular form of notice created an interest whose violation was an injury for which Congress prescribed statutory damages). District courts agree that a plaintiff who alleges a violation of the pre-amendment "two notice" provision of the EFTA suffered an injury-in-fact sufficient to confer standing. *See, e.g.*, *Alicea v. Citizens Bank of Pennsylvania*, 2013 WL 1891348 (W.D. Pa. May 6, 2013); *Frey v. eGlobal ATM*, 2013 WL 1091237, at *2 (N.D. Tex. March 15, 2013).

[14] *Mabary v. Hometown Bank, N.A.*, 276 F.R.D. 196 (S.D. Tex. June 27, 2011).

[15] *See, e.g., id.* at 201 (*citing Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir.1991); *Young v. Asset Acceptance, LLC*, No. 3:09–CV–2477–BH, 2011 WL 618274, at *2 (N.D. Tex. Feb. 10, 2011)).

5

circumstances fit within the "relation back" exception.[16]  That doctrine prevents a defendant from "picking off" a named plaintiff by mooting her individual claim before the court has an opportunity to rule on the question of class certification, if the plaintiff has timely and diligently pursued a motion for class certification that actually results in a class being certified.[17]  The doctrine allows certification to "relate back" to the filing of the complaint, when the plaintiff's claims presented a live controversy, such that class members "take the place of the named plaintiff(s) for Article III purposes *while* the plaintiff(s) still possessed live claims."[18]  If the district court on remand "ultimately grants the motion to certify, then the Rule 68 offer to the individual plaintiff" will not fully satisfy the class action claim; "if the court denies the motion to certify, then the Rule 68 offer of judgment renders the individual plaintiff's claims moot."[19]

We disagree, moreover, with Home Town's contention that this Court's "relation back" rationale does not survive the Supreme Court's recent decision in *Genesis Health Corp. v. Symczyk*.[20]  There, the Supreme Court held that a collective action under the Fair Labor Standards Act ("FLSA") was no longer justiciable when plaintiff conceded, and the Third Circuit decided, that an earlier unaccepted offer of complete judgment mooted the plaintiff's individual claim.  But the Supreme Court noted, and expressly did not decide, a circuit

---

[16] *See id.* at 200–202 (*citing Murray v. Fidelity National Financial, Inc.*, 594 F.3d 419, 421 (5th Cir.2010); *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1045, 1050 (5th Cir. Unit A July 1981)).

[17] *Id; Zeidman*, 651 F.2d at 1051 ("We conclude that a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims, at least when, as here, there is pending before the district court a timely filed and diligently pursued motion for class certification.")

[18] *Mabary*, 276 F.R.D. at 200–02.

[19] *Id.* at 203–04 (*citing Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 921 (5th Cir. 2008).

[20] 133 S. Ct. 1523, 1529 (2013).

split on "whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot" when the collective action class has not yet been certified.[21]   The Supreme Court also rejected the plaintiff's reliance on Rule 23 class action cases, explaining that "Rule 23 actions are fundamentally different from collective actions under the FLSA."[22]

Mabary did not voluntarily accept a full settlement offer before filing a motion for class certification, a scenario we have identified as being outside the scope of the "relation back" doctrine.[23]   Nor did Home Town's offer of judgment satisfy both the individual and class-wide statutory maximum claims.[24]  Home Town's attempt to "pick off" Mabary's claim before the court could decide the issue of class certification fits squarely within the "relation back" doctrine, which saves her claim from mootness at this stage.

## IV.

We turn to whether the EFTA amendment eliminating the "two notice" provision applies to Mabary's claims, which are based on ATM withdrawals that pre-date the amendment.  Our starting point is the "deeply rooted" presumption against retroactivity of *Landgraf v. USI Film Products*.[25]  We first determine whether Congress unambiguously has prescribed the statute's proper reach, determined by applying normal rules of statutory construction

---

[21] *Id.* at 1529–30.

[22] *Id.* at 1529 (citations omitted).  *Cf. Sandoz v. Cingular Wireless*, 553 F.3d 913, 916 (5th Cir. 2008) (holding that the relation back principle applies to ensure that defendants cannot unilaterally "pick off" collective action representatives and noting that the fundamental differences between "opt out" Rule 23 class actions and "opt in" FLSA collective actions suggests that the "rules and policies underlying" one "might not apply" when construing the other).

[23] *Thomas v. Mamaso*, 2013 WL 6225182, at *1–*2 (5th Cir. Dec. 2, 2013) (unpublished).

[24] *See Johnson v. Midwest ATM, Inc.*, 881 F. Supp. 2d 1071, 1073–74 (D. Minn. July 31, 2012).

[25] 511 U.S. 244, 265 (1994).

to the express language to determine Congress's intent.[26]  Failing that, we then look to "whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."[27]  "[E]very statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective."[28]  And these retroactive effects being "a *sufficient*, rather than a *necessary*, condition for invoking the presumption against retroactivity," the "outer limits of impermissible retroactivity" are even broader, defined instead by the "functional conception" behind the presumption.[29]  If these inquiries demonstrate that the EFTA amendment has a "retroactive effect," we apply the presumption against retroactivity "unless Congress has clearly manifested its intent to the contrary."[30]

H.R. 4367 is silent on the statute's temporal reach, neither expressly indicating that it is retroactive nor giving any clear indication that Congress intended the amendment apply retroactively.  Home Town's argument that retroactive application of the EFTA amendment "would vindicate its purpose more fully . . . is not sufficient to rebut the presumption against retroactivity,"[31] nor does it give us license to read into the statute an intent that does not appear there.  We look, then, to whether applying the EFTA amendment retroactively

---

[26] *Lindh v. Murphy*, 521 U.S. 320, 324–26 (1997); *Landgraf*, 511 U.S. at 280.

[27] *Landgraf*, 511 U.S. at 280.

[28] *Id.* at 269 (citation omitted).

[29] *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 947 (1997) (citation omitted).

[30] *Id.* at 946 (citation omitted).

[31] *Landgraf*, 511 U.S. at 285–86.

to Mabary's claims would have an impermissible retroactive effect, and determine that it would. Retroactive application would impermissibly attach new legal consequences to prior events by completely depriving Mabary of her claims.[32] Prior to the passage of the amendment, Mabary had a cause of action based upon Home Town's alleged actions, but afterward she would not—the amendment thus "may be seen as *destroying* a cause of action and impairing a party's rights."[33] Mabary's private civil right to statutory damages accrued prior to the amendment's effective date, "a right that would be impaired if [the amendment's] repeal of private rights of action were applied retrospectively."[34]

Home Town seeks to escape this conclusion by arguing that the repeal of the "two notice" provision merely changed Congress' preferred method for effectuating a substantive right to notice, making a substantive/procedural distinction in light of prior holdings that retroactive application of procedural rules is permissible.[35] Although this argument has purchase, it finds little support in the framework of existing precedent. The "two notice" provision and

---

[32] *See Mathews v. Kidder, Peabody & Co.*,161 F.3d 156, 165 (3d Cir. 1998) (holding that "a change from treble damages (under RICO) to compensatory damages alone (under the securities laws) may be seen as *destroying* a cause of action and impairing a party's rights," and thus having a retroactive effect under *Landgraf*).

[33] *Cf. id.* at 163, 165; *Scott v. Boos*, 215 F.3d 940, 944–45 (9th Cir. 2000) (holding that an amendment that eliminated liability under RICO for certain fraudulent acts would have an impermissible retroactive effect if applied to claims alleging violations before the amendment's effective date because "prior to the [amendment] a plaintiff had a RICO claim based on a defendants' alleged securities fraud, while afterwards a plaintiff does not").

[34] *Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 622 (7th Cir. 2007) (reversing under *Landraf* the dismissal of a class action alleging violations of certain disclosure requirements under the Fair Credit Reporting Act where an amendment, which became effective after the violations but before the class action was filed, eliminated private enforcement of the disclosure provisions).

[35] *See, e.g.*, *Landgraf*, 511 U.S. at 275 (noting that "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity" because they involve "diminished reliance interests" and "regulate secondary rather than primary conduct"). *Cf. Blaz v. Belfer*, 368 F.3d 501, 502–05 (5th Cir. 2004) (Because a statute "provides a procedural framework for the secondary conduct of filing certain state securities claims[, and] does not regulate the primary conduct that is the subject of those claims," it is not "impermissible retroactive.")

its repeal govern the primary conduct of posting notices on ATMs, not the secondary conduct of procedural mechanisms for adjudicating claims. At the time Mabary's claim arose, she had a substantive right to two notices or statutory damages, and without clear Congressional intent to the contrary, the presumption against retroactivity restricts the application of the EFTA amendment to eliminate her claim. We thus are unable to fit the substantive two-notice right into a procedural framework, and must hold that the EFTA amendment does not apply retroactively to Mabary's claim.[36]

V.

The district court determined that because Mabary's claim did not survive the repeal of the "two notice provision," the basis of any class claim ceased before certification and a class could not be certified to vindicate a defunct statutory right. Although this Court generally reviews the district court's denial of class certification for abuse of discretion,[37] we review de novo determinations of questions of law.[38] Holding as we do that the repeal of the

---

[36] In so holding, we join both circuits to have considered this issue. *See Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 674, 678 (7th Cir. 2013) (applying the pre-amendment "two notice" provision to plaintiff's class action suit and explaining that the failure to post an external second notice on an ATM violated the provision of the EFTA in effect at the time of the alleged violations, "and so exposed [defendant] to liability"); *Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819, 821, 824 (8th Cir. 2013) (applying to plaintiff's suit the "two notice" provision of the EFTA in effect at the time the plaintiff completed the ATM transactions because the later repeal of the provision did not apply retroactively). Our holding also is consistent with the district courts to have considered the question. *See Pike v. Nick's English Hut, Inc.*, 937 F. Supp. 2d 956, 960 (S.D. Ind. March 27, 2013) (applying *Landgraf* to the EFTA amendment and determining that "based upon the lack of explicit congressional direction that the changes to the EFTA apply retroactively, the fact that the law disfavors retroactive applicability of statutory law, and [plaintiff's] vested right to pursue a claim for violation of the EFTA," the pre-amendment version of the EFTA applied to plaintiff's claim); *Gonzalez v. Investors Bank*, 2013 WL 5730528, No. 2:12-cv-04084, at *2, *4–*5. (D. N.J. Oct. 21, 2013) (applying *Landgraf* to the EFTA amendment and determining that retroactive application would impermissibly "attach[] new legal consequences to prior events by completely depriving [p]laintiffs of their claims").

[37] *Berger v. Compaq Computers, Inc.*, 257 F.3d 475, 478 (5th Cir. 2001).

[38] *Fener v. Operating Eng'rs Constr. Indus. & Miscellaneous Pension Fund (Local 66)*, 579 F.3d 401, 406 (5th Cir. 2009).

No. 13-20211

"two notice" provision does not apply retroactively to Mabary's claim, the EFTA amendment poses no more a barrier for putative class members than it does for Mabary, for claims alleging violations before the amendment was enacted.[39] We thus VACATE the district court's denial of class certification and REMAND for the district court to decide whether the class should be certified pursuant to Rule 23 and other considerations, it being best positioned to make factual and legal findings necessary for this determination in the first instance.[40]

---

[39] *See, e.g.*, *Harter v. Beach Oil*, 2013 WL 6051028, No. 3:10-cv-0968 (M.D. Tenn. Nov. 15, 2013) (granting plaintiff's motion for class certification after determining that the EFTA amendment did not apply retroactively to defeat plaintiff's claim); *Pike v. Nick's English Hut, Inc.*, 937 F. Supp. 2d 956 (S.D. Ind. March 27, 2013) (certifying class on January 14, 2013, after the EFTA amendment was enacted); *Killingworth v. HSBC Bank Nevada*, 507 F.3d 614, 617–18 (7th Cir. 2007) (reversing a motion to dismiss because it found a statutory amendment did not apply retroactively to a claim alleging pre-amendment violations, in a case where plaintiff filed her class action lawsuit after the statute that removed her right to a claim became effective). *Cf. Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672 (7th Cir. 2013) (reversing a district court's decision to decertify a class on other grounds, after assuming that the two-notice provision of the EFTA did not apply retroactively to plaintiff's claim).

[40] *See Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000).

No. 13-20211

E. GRADY JOLLY, Circuit Judge, dissenting:

With due respect, it is difficult to determine which feature of the majority's opinion is more stunning: that it finds standing on the basis of a new theory of law that has not been so much as hinted at, much less urged, by the plaintiff in this case; or that this "delayed-notice" theory of injury on which it finds standing is so utterly unsupported by law or fact. Mabary is represented by able counsel, and it is gratuitous for the majority to aid Mabary with a standing theory of its own devising. Instead, we should consider the standing argument that she actually makes—that is, simply by virtue of her statutory cause of action, it follows that she also has standing to sue. This argument is foreclosed by Article III of the Constitution, however, and, lacking any injury in fact, Mabary lacks standing.

I.

The basic requirements of standing are familiar: "a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). Mabary does not claim any economic injury—nor could she: it is undisputed that she received actual notice of the fee and chose to complete the transaction anyway. Nonetheless, the majority finds standing, *supposing* that "a user of an ATM is not in the same position to decline an ATM transaction at the initial point, where she walks by the ATM and sees the posted notice . . . , as she is at a later point, when she receives screen notice only after having retrieved her ATM card, entered personal information such as a Personal Identification Number, and initiated a transaction." Hardly concrete injury; hardly an injury in fact when no such fact is even claimed by the plaintiff. Put differently, the majority concludes that the few seconds' delay between when Mabary *might* have seen posted notice and when she saw the screen notice is

12

an Article III injury in fact because, theoretically, she *could have been* dissuaded by the posted notice before she invested time and effort into initiating the transaction.

This is a novel theory of injury in fact, one that Mabary never mentioned at any point in this case[1] and one that, so far as I can tell, no court has ever endorsed. Indeed, to my way of thinking, it is, respectfully, silly stuff. But even assuming that the delayed-notice theory is viable in the abstract, it fails on the facts of this case to yield an injury that is cognizable under Article III.

To constitute an Article III injury in fact, Mabary's injury must be "concrete" and "particularized," rather than "speculative" or "conjectural." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147, 1149 (2013) (internal quotation marks omitted). Her purported delayed-notice injury easily and surely falls on the speculative-or-conjectural side of this distinction. According to the majority, "a user of an ATM" is better situated to avoid an ATM fee if she is given posted notice rather than just screen notice. Even if this speculation proved true, or even if it had been alleged, it is irrelevant. The critical question for Article III purposes is not what is likely to befall any given "user of an ATM" as a result of Home Town's conduct, but whether "the injury . . . affect[ed] *the plaintiff* in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1991) (emphasis added). Neither Mabary nor the majority cites any evidence showing that Mabary—rather than some hypothetical ATM user—might have, in the abstract, made a different decision had she known about the fee before she initiated the transaction.

To be sure, in the world of speculation, posted notice may just as well have made no difference at all. Allow this dissent to speculate along with the

---

[1] Arguments not made are, of course, waived. *See, e.g., United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009).

majority.  Perhaps Mabary knew that Home Town's ATMs would charge her a fee even before she began the transactions.[2]  Or perhaps Mabary was in a hurry on the days on which she used Home Town's ATMs, such that she had already decided to complete the transactions whether or not she would be charged a fee.  "[S]tanding," however, "is not an ingenious academic exercise in the conceivable but requires a factual showing of perceptible harm."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (internal alterations omitted).  Mabary has made no factual showing—none—that she might have made different decisions had she received posted notice.  Indeed, her counsel conceded as much at oral argument, saying that "I don't think there are really facts in this record about exactly what Mabary knew when about the fee that would be charged."  This lack of a factual showing should have stopped in its tracks the majority's speculative, delayed-notice theory of injury.

## II.

But of course (though it is no matter to the majority), Mabary fails to even suggest that she had standing based on a delayed-notice theory.  Instead, she asserts that she suffered an injury in fact because the EFTA provided her a right not to be charged a fee absent the statutorily required notice, and Home Town violated that right.[3]  There remains the constitutional question

---

[2] Indeed, as to some transactions, she likely did, given that the record shows she used Home Town's ATMs more than once.

[3] Mabary also seems to argue that she suffered the sort of "informational injury" that was recognized by the Supreme Court in *FEC v. Akins*, 524 U.S. 11 (1998).  But in order to suffer informational injury, a plaintiff must actually be deprived of information.  *See Akins*, 524 U.S. at 21 ("[A] plaintiff suffers an 'injury in fact' when the plaintiff *fails to obtain information* which must be publicly disclosed pursuant to a statute.") (emphasis added); *see also Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 430 (5th Cir. 2013) (distinguishing a prior case declining to find informational-injury-based standing on the ground that, in the case at bar, the defendant "never claimed that it . . . at any time complied with [the] reporting requirement"). Mabary's assertion is not that that she was deprived of the information that she would be charged a fee if she used Home Town's ATMs, but rather that Home Town failed to provide her with the information in a form to which she was

implicated by Mabary's argument: can Congress, by authorizing a remedy for the bare violation of a statute, create Article III standing where it would not otherwise exist?  Although this question is weighty, well-settled principles dictate that the answer is no.

It is an elementary principle that Article III limits the power of the federal judiciary to "cases" and "controversies," U.S. Const. art. III, § 2, and that standing's requirement of injury in fact is "derived directly from" the case-or-controversy requirement. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (internal quotation marks omitted).  Inherent to the nature of constitutional rules—constitutional rules like the Article III-derived requirement of injury in fact—is the fact that they cannot be set aside by Congress; they are, instead, "superior, paramount law, unchangeable by ordinary means." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803).  For this reason, it has long been "settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3; *see also, e.g., Summers*, 555 U.S. at 497 ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("Congress may, by legislation, expand standing to the full extent permitted by Art. III . . . .  In no event, however, may Congress abrogate the Art. III minima: A plaintiff must always have suffered a distinct and palpable injury to himself . . . ." (internal quotation marks omitted)).

This long-settled principle resolves this case.  Mabary cannot show that she suffered a cognizable injury in fact, so she can sue only if the existence of

---

statutorily entitled.  Thus, the informational-injury line of cases is inapposite, and Mabary's assertions of injury in fact are vaporized to the contention that the invasion of a statutory right is, in itself, injury in fact.

her statutory cause of action sufficed to satisfy Article III. But since Congress cannot create standing *ex nihilo*, the existence of that cause of action does not allow Mabary to bring this injury-less suit.

Mabary offers one quote from *Warth v. Seldin*, 422 U.S. 490 (1975), to support her position. There, the Court stated that "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth*, 422 U.S. at 514. But this statement does not mean (as Mabary seems to urge) that Congress may confer standing upon a plaintiff who has suffered no concrete, *de facto* injury. Instead, as the Court has later explained, it means merely that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Lujan*, 504 U.S. at 578. In other words, Congress's creation of a cause of action can make an injury legally cognizable, but it can't make a non-injury justiciable in an Article III court. To hold differently defies the Supreme Court's oft-repeated observation that the requirement of injury in fact is "an outer limit to the power of Congress [that] is a direct and necessary consequence of the case and controversy limitations found in Article III." *Id.* at 580 (Kennedy, J., concurring).

For these reasons, I respectfully dissent.