# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-10375

United States Court of Appeals
Fifth Circuit

**FILED**

February 20, 2015

Lyle W. Cayce
Clerk

JAMES L. FREY,

   Plaintiff - Appellee

v.

FIRST NATIONAL BANK SOUTHWEST,

   Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-3093

Before BENAVIDES, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:*

  James Frey instituted a class action against First National Bank Southwest ("First National") because its ATM at a particular location lacked a fee notice on the exterior of the machine, in violation of the Electronic Funds Transfer Act ("EFTA"). 15 U.S.C. § 1693b(d)(3) (2011). The district court certified a class of consumers who were charged a fee for using the ATM

---

  * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10375

without being given the required exterior notice during a specified period. First National appeals.  We affirm.

## I.  Factual and Procedural Background

First National operates an ATM in Plano, Texas.  The ATM charges a fee for use by those who are not account-holders at First National.  EFTA requires that operators of ATMs provide notice to consumers when a fee will be imposed for use of the ATM.  15 U.S.C. § 1693b(d)(3).  During the relevant time period, EFTA required ATM operators to give notice in two locations, both "in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer" and "on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction."  *Id*. § 1693b(d)(3)(B) (2011).  To be protected by EFTA, the consumer's account must be an account that is "established primarily for personal, family, or household purposes."  *Id*. § 1693a(2).  EFTA provides that no fee may be imposed unless the required notice is given.  *Id*. § 1693b(d)(3)(C).

Section 1693m of EFTA creates a cause of action for violation of the fee notice provision, and permits recovery of actual damages and statutory damages.  *Id*. § 1693m(a).  For an individual action, the statutory damages range from $100 to $1,000.  *Id*. § 1693m(a)(2)(A).  For class actions, EFTA authorizes a court to award up to $500,000 or one percent of the net worth of the defendant ATM operator.  *Id*. § 1693m(a)(2)(B).  EFTA also provides multiple statutory defenses to liability.  The ATM operator is not liable if "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  *Id*. § 1693m(c).  The ATM operator is also not liable if the

No. 13-10375

operator posted a compliant notice and "the notice is subsequently removed, damaged, or altered by any person other than the operator." *Id*. § 1693h(d).

On October 20, 2011, James Frey made a withdrawal from First National's ATM. While the ATM had an on-screen notice advising him of the transaction fee, Frey alleges that the ATM did not have the required exterior notice of the fee. Frey was charged a $3.50 fee for withdrawing cash from the ATM.

On November 9, 2011, Frey filed a class action suit against First National on behalf of himself and all others similarly situated, alleging violation of the EFTA exterior notice requirement. His complaint seeks statutory damages, costs, and attorney's fees. In February 2013, the district court granted Frey's motion for class certification. It certified a class of consumers who were charged withdrawal fees from the allegedly non-compliant ATM machine between November 9, 2010 and April 26, 2012, the date First National posted a compliant notice on the ATM. First National appeals the class certification. After hearing oral argument in this case, we held the appeal in abeyance pending the resolution of *Mabary v. Home Town Bank*, No. 13-20211, a previously-argued case which raised identical issues. That case has now been resolved. *Mabary v. Home Town Bank, N.A.*, 771 F.3d 820 (5th Cir. 2014). We now decide the instant appeal.

## II. Discussion

First National challenges the class certification on two grounds. First, it argues that a 2012 amendment to EFTA applies retroactively to extinguish Frey's claims. Second, it argues that the district court erred in concluding that the requirements of Rule 23 were satisfied. We address each issue in turn.

### A.    *Retroactivity of EFTA Amendment*

EFTA was amended in December 2012 to remove the requirement for an exterior fee notice on the machine. 15 U.S.C. § 1693b(d)(3)(B) (2012), *as*

3

*amended by* Amendment—Electronic Fund Transfer Act, P.L. 112-216, December 20, 2012, 126 Stat 1590. As a result, ATM operators are no longer required to maintain any exterior notice of fees that will be charged, although they must still provide an on-screen notice. *Id.* First National contends that this amendment applies retroactively.

"Our starting point is the 'deeply rooted' presumption against retroactivity of *Landgraf v. USI Film Products.*" *Mabary v. Home Town Bank, N.A.*, 771 F.3d 820, 825 (5th Cir. 2014) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994)). We apply the *Landgraf* two-part test to determine whether a statutory amendment applies retroactively. *Id.* First, we "determine whether Congress unambiguously has prescribed the statute's proper reach, determined by applying normal rules of statutory construction to the express language to determine Congress's intent." *Id.* Second, if Congress has not clearly expressed an intent to apply the statute retroactively, we determine "whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* (quoting *Landgraf*, 511 U.S. at 280). If the amendment would have a retrospective effect on vested rights, the statute should not be applied retroactively, absent clear congressional intent to the contrary. *See id.* at 825-26.

*Mabary v. Home Town Bank* establishes that under the *Landgraf* test, the 2012 EFTA amendment should not be applied retroactively to Frey's claims. *Id.* at 826-27. The *Mabary* court found that the text of the EFTA amendment is silent as to retroactive application, and that applying the statute retroactively would have an impermissible retrospective effect by destroying a cause of action that had already accrued. *See id.* at 826. The court concluded that "[a]t the time Mabary's claim arose, she had a substantive

4

right to two notices or statutory damages, and without clear Congressional intent to the contrary, the presumption against retroactivity restricts the application of the EFTA amendment to eliminate her claim." *Id.* at 827.[1] Frey's claim similarly accrued during the time he and others similarly situated had a right to two notices or statutory damages, and the EFTA amendment does not apply retroactively to extinguish those claims.

First National also argues that, regardless of whether the EFTA amendment is retroactive, the amendment precluded certification because it took effect before the class was certified and thus before putative class members were parties to the suit. *Mabary* also expressly rejected this argument: "[T]he EFTA amendment poses no more a barrier for putative class members than it does for Mabary, for claims alleging violations before the amendment was enacted." *Mabary*, 771 F.3d at 827.

Thus, the EFTA amendment has no effect on the district court's certification of the class and the pending class claims.

### B.    *Rule 23*

Next, First National contends that the district court erred in certifying a class under Rule 23. "[T]he district court maintains great discretion in certifying and managing a class action. We will reverse a district court's decision to certify a class only upon a showing that the court abused its discretion, or that it applied incorrect legal standards in reaching its decision." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir. 1999) (citations omitted). Though, of course, the district court's "discretion must be

---

[1] As the *Mabary* court noted, the two other circuits that have addressed similar claims have not applied the EFTA amendment retroactively. *See Mabary*, 771 F.3d at 827 n.36 (citing *Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 674, 678 (7th Cir. 2013); *Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819, 821, 824 (8th Cir. 2013)).

exercised within the framework of rule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).

The district court certified the class pursuant to Federal Rule of Civil Procedure 23(b)(3). "A class may be certified under Rule 23(b)(3) only if it meets the four prerequisites found in Rule 23(a) and the two additional requirements found in Rule 23(b)(3)." *Mullen*, 186 F.3d at 623. The four Rule 23(a) prerequisites are:

> (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).

*Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). The two additional Rule 23(b) requirements are "predominance" and "superiority," which require that common questions "predominate over any questions affecting only individual members," and that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *Amchem Prods.*, 521 U.S. at 615; *Mullen*, 186 F.3d at 623-24.

First National does not challenge the district court's conclusions with regard to the four Rule 23(a) requirements or the superiority requirement, but argues that the district erred because: (1) the class does not meet Rule 23's implicit ascertainability requirement; and (2) common issues do not predominate.

1.    *Ascertainability*

We have stated that "in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012)

(quotation and alteration omitted). "However, the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed. 2011). First National argues that because EFTA applies only to consumers whose accounts are "established primarily for personal, family, or household purposes," 15 U.S.C. § 1693a(2), the court would have to conduct a fact-intensive, individualized inquiry into the nature of every class member's account, rendering the class unascertainable.

The district court's conclusion that the class is sufficiently ascertainable was not an abuse of discretion. The class definition here is clear and definite. It includes an estimated 1,500 identifiable individuals charged a recorded fee after using one specified ATM between two specified dates. The district court found that class members may be identified from account numbers and bank identification numbers associated with the ATM transactions. *See Gawarecki v. ATM Network, Inc.*, No. 11-CV-1923, 2014 WL 2600056, at *17 (D. Minn. June 10, 2014) (describing how account holders in a similar case could be identified). Moreover, as the district court found, the class size is estimated at 1,500 members, which renders the identification of consumers by account and bank identification numbers manageable. Partly on this basis, the district court persuasively distinguished other EFTA cases which have found ascertainability lacking or identification of class members to be unmanageable. *See Ballard v. Branch Banking and Trust Co.*, 284 F.R.D. 9, 14 (D.D.C. 2012) (noting that it would be difficult to identify class members where hundreds or thousands of banks might be involved, and notice by publication would be "fraught with difficulties" specific to the particular ATM's location); *Mowry v. JP Morgan Chase Bank, N.A.*, 2007 WL 1772142, at *6 (N.D. Ill. June 19, 2007)

No. 13-10375

(finding a proposed class including approximately twenty million transactions unmanageable).

First National argues a fact-intensive analysis would be required to differentiate EFTA-protected consumer accounts from commercial accounts. It argues that we should import the test courts have applied under the Truth in Lending Act ("TILA"), which applies only to consumer loans rather than commercial or business loans. *See Cobb v. Monarch Fin. Corp.*, 913 F. Supp. 1164, 1174-75 (N.D. Ill. 1995); *Pfeffer v. HSA Retail, Inc.*, 2012 WL 1910034, at *4 (W.D. Tex. May 24, 2012) (applying the *Cobb* analysis in an ETFA fee-notice class action case). In a case involving violation of different EFTA provisions than the ones at issue here, the *Cobb* court looked to TILA cases to assist its determination of whether the account at issue was "established primarily for personal, family or household purposes." *Cobb*, 913 F. Supp. at 1174-75. Under TILA, which applies only to "consumer credit transactions," courts "'examine the transaction as a whole' and in light of 'the entire surrounding factual circumstances' and if a transaction 'involves a profit motive,' that indicates a business or commercial transaction.'" *Id*. at 1174 (internal citations omitted) (quoting *In re Booth*, 858 F.2d 1051, 1054-55 (5th Cir. 1988); *Tower v. Moss*, 625 F.2d 1161, 1166 & n.4 (5th Cir. 1980)). The *Cobb* court found the TILA case law to be illustrative, and determined that since the plaintiff's accounts received direct deposits from her paychecks and were used to make payments on personal loans, she had sufficiently alleged that her account was a personal account protected by EFTA. *See id*.

However, in spite of *Cobb*'s recognition that some TILA case law may be illustrative in the EFTA context, we see no basis for importing all the elements of the transaction-specific TILA test into the instant case. EFTA defines "account" by means of the purpose for which the account is "established." 15 U.S.C. § 1693a(2). As the district court explained, EFTA "does not require that

8

the proceeds of an ATM transaction be used for personal purposes. Nor does it require inquiry into whether the account was *mostly* used for personal purposes. It asks only for what the account was established." *Frey v. First National Bank Southwest*, No. 3:11-CV-3093, slip op. at 12 (N.D. Tex. Feb. 20, 2013) (order certifying class). The district court found that some inquiries with banks or individual class members can be made to establish whether the account is a personal account or a business account, which would be largely administrative. *See Butto v. Collecto Inc*., 290 F.R.D. 372, 382 (E.D.N.Y. 2013) ("The Court does not find it particularly arduous to ask potential class members the simple question of whether the individual's debt at issue qualifies as a consumer debt."); *Kinder v. United Bancorp, Inc.*, No. 11-CV-10440, 2012 WL 4490874, at *5 (E.D. Mich. Sept. 28, 2012) (finding that "this concern can easily be addressed when class members are identified by asking them to disclose the primary purpose of their account"). Contrary to First National's argument, there is nothing to suggest that a lengthy individualized analysis of each account and all of its individual transactions would be necessary to identify class members. We thus find no error in the district court's ruling with regard to ascertainability of the class.

### 2. *Predominance*

Before certifying a class under Rule 23(b)(3), a court must determine that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *Mullen,* 186 F.3d at 624. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. This inquiry requires us to consider "how a trial on the merits would be conducted if a class were certified." *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)). This "entails

identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Id.* (quoting *Bell Atl.*, 339 F.3d at 302). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

The district court found that common questions of law or fact predominate, because "[c]ommon proof can be used to establish liability, or lack thereof." *Frey*, slip op. at 13. Specifically, the court concluded that proof of missing notice at the time a consumer used the ATM is sufficient to establish a claim, and if Frey can prove a period of time in which the notice was missing, "every proposed class member can utilize that proof." *Id.* Additionally, the district court found that First National's entitlement to either of the two statutory defenses is a common issue. The district court concluded that these issues affect each class member's claim and predominate over the individual issues.

We agree. The primary questions with regard to First National's liability are whether and when First National failed to provide the on-machine fee notice in violation of the EFTA's requirements during the class period; if so, the appropriate amount of statutory damages; and whether the bank can avail itself of either of the two statutory defenses to liability. The answers to these questions will affect all class member's claims. *See Christy v. Heritage Bank*, No. 3:10-CV-0874, 2013 WL 6858008, at *6 (M.D. Tenn. Nov. 8, 2013); *Gawarecki*, 2014 WL 2600056, at *15. These common issues "constitute a significant part of the individual cases," sufficient to meet the predominance requirement. *Jenkins*, 782 F.2d at 472.

No. 13-10375

First National argues that common issues do not predominate because: (1) each class member must prove that the account was established primarily for personal use, rather than business use; and (2) each class member must prove that notice was absent when he or she used the ATM.  First National's arguments often assume that *all* questions regarding liability must be capable of being proved by common evidence.  This, however, is not the standard.  Frey must show that common issues predominate, not that there are no individual issues to be resolved.  *See id.*

First National's argument regarding the nature of the account is nearly identical to the argument it makes regarding the ascertainability of the class. It argues that because EFTA applies only to consumer accounts, the court must do an intensive individualized analysis to determine if each class member's account was personal.  As explained above and as the district court found, differentiating consumer accounts from business accounts may be done by inquiring of the banks or requiring class members to answer some threshold questions about the nature of the account.  *See Gawarecki,* 2014 WL 2600056, at *1; *Kinder*, 2012 WL 4490874, at *5.  Regardless, the fact that some inquiry into the nature of each account will have to be made does not render that issue predominant over the multiple common issues bearing on First National's liability.[2]

---

[2] Many district court cases involving consumer protection statutes that treat consumer transactions differently than business transactions have held that the need to differentiate between the two does not render the class unidentifiable or defeat the predominance requirement.  *See Butto,* 290 F.R.D. at 382 (class certified for violations of Fair Debt Collection Practices Act despite need to determine whether debts were consumer or non-consumer debts); *Wells v. McDonough*, 188 F.R.D. 277, 278-79 (N.D. Ill. 1999) (same); *In re CBC Companies, Inc. Collection Letter Litigation*, 181 F.R.D. 380, 385 (N.D. Ill. 1998) (same); *Selburg v. Virtuoso Sourcing Grp., LLC*, 2012 WL 4514152, at *3, *9-10 (S.D. Ind. Sept. 29, 2012) (same); *Hughes v. Cardinal Fed. Sav. & Loan Assoc.*, 97 F.R.D. 653, 655 (S.D. Ohio 1983) (class certified despite need to determine whether each mortgagee was a commercial or consumer borrower); *Sanchez v. Lowell Lebermann, Inc.,* 79 F.R.D 21, 24 (W.D. Tex. 1978)

11

No. 13-10375

First National also argues that whether notice was absent from the ATM on any particular date is an individual question that each class member must establish.  First National relies on one district court decision which found that the predominance requirement might not have been satisfied in a similar case. *See Ballard,* 2012 WL 2089053, at *13.  There, the district court found there was no evidence as to whether the on-machine fee notice was absent during one particular subpart of the class period.  *Id.*  The court suggested that "common proof may not resolve the factual question of when the 'on-machine' notice ceased to be affixed to the ATM" during this period.  *Id.*  Thus, although it resolved the case on other grounds, the court suggested that each class member might have to individually prove that notice was absent on the date he or she used the ATM.  *Id.*

However, we find the district court's analysis in the instant case, in line with the analysis in *Christy* and *Gawarecki,* to be more persuasive.  The district court here found that:

> [A]ssuming sufficient evidence such that a reasonable juror could conclude that fee notice was absent for any particular period of time, any class member without affirmative proof that the notice was not there on any particular day is entitled to some inference that the notice was absent.  Thus, the period in which the sign was absent is a common issue of fact, and whether the notice was absent on any particular day is not an individualized inquiry defeating predominance.

*Frey*, slip op. at 13-14.  The *Christy* court held likewise, explaining that the named plaintiff "will have to prove the period of time during which the on-machine fee notice was missing, but each proposed class member will not have to do the same."  *Christy*, 2013 WL 6858008, at *7; *see Gawarecki*, 2014 WL 2600056, at *15 ("[T]he determination of the time period in which Defendant

_____

(class certified for violations of Truth-in-Lending Act despite requirement that purchased vehicles be primarily for personal, family or household use).

was, or was not, in compliance with the EFTA notice provision applies to the entire class and so will be made by common evidence."). If the plaintiff's evidence "allows a reasonable juror to conclude the notice was not affixed for a particular period, every class member who used the ATM during that time is entitled to an inference that the notice was absent." *Christy*, 2013 WL 6858008, at *7. Any evidentiary inferences to be drawn from the proof regarding the dates the notice was absent will need to be resolved by the trier of fact. The proof that is ultimately produced may or may not ultimately entitle all class members to relief, but the proof required is still common to the class.

Further, this case does not involve the type of individualized issues that have led courts to find predominance lacking. For example, in *Amchem Products*, 521 U.S. 591 (1997), the Supreme Court found that common issues did not predominate where the members of the plaintiff class were exposed to asbestos-containing products from different sources in different time periods, some of the class members had no symptoms while others were ill, and the class members were from different states requiring the application of different legal standards. *See id.* at 2250-51. Similarly, in *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996), this court found that a putative class of addicted smokers did not meet the predominance requirement because there were complex choice-of-law issues and the case involved novel claims with no history from which a court could determine which common issues were "significant," as compared to the individual issues. *See id.* at 741-45. By contrast, in *Mullen v. Treasure Chest Casino*, this court found that common issues did predominate when casino employees became ill because of a malfunctioning ventilation system, because the employees suffered the same injury, were exposed to the same alleged source of the illness, were subject to the same federal law, and presented a common theory of liability. *See Mullen*, 186 F.3d at 626-27.

Here, the putative class members all used the same ATM during the specified time period, and were allegedly charged a fee without the required notice being posted. Because there is a common course of conduct that provides a class-wide basis for deciding significant common issues of fact and law, including whether and when the required notice was absent and whether First National has proven any defense, the district court correctly concluded that common issues predominate. *See Mullen*, 186 F.3d at 626-27.

### III. Conclusion

For the foregoing reasons, the district court's certification of the class is AFFIRMED.